IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:99-cr-203 (LMB) |
| | )   1:16-cv-121 (LMB) |
| GARY D'ANGELO McDUFFIE, | ) |
| | ) |
| Movant. | ) |

MEMORANDUM OPINION

Defendant, Gary D'Angelo McDuffie ("movant" or "McDuffie") acting pro se, has filed a Petition to Vacate and Set Aside Judgment and Sentence or in the Alternative for a New Trial Based on Newly Discovered Evidence Pursuant to R. 33 ("Petition") [Dkt. Nos. 141 and 142]. This pleading arises out of the finding by the FBI that an FBI expert who testified as a government witness during movant's 1999 trial about microscopic hair comparison analysis violated certain scientific standards that were agreed to by the Innocence Project and the FBI in November of 2012. McDuffie argues that "this newly discovered evidence is Brady and Giglio material which the prosecution knew or should have known . . ." and that he is entitled to have his conviction vacated in light of this new evidence. Petition at 3.

Although there is no similar evidence of any defect in the fingerprint evidence introduced at trial, he also claims that evidence was scientifically defective and he maintains that his defense counsel was ineffective in failing to engage expert witnesses to counter the government's experts.

The record shows that the movant filed a Motion to Vacate under 28 U.S.C. § 2255 on June 26, 2003 [Dkt. No. 112]. That motion was dismissed on December 10, 2013 and the dismissal was summarily affirmed on April 26, 2004 [Dkt. No. 121]. On April 18, 2005 movant's motion for authorization under 28 U.S.C. § 2244 to file a second or successive petition

was denied by the Fourth Circuit [Dkt. No. 123].

To the extent McDuffie is trying to file a second or successive motion under 28 U.S.C. § 2255 to vacate his conviction, this Court does not have jurisdiction to consider the motion, unless he first receives permission from the appropriate court of appeals, in this case the United States Court of Appeals for the Fourth Circuit, to file a second or successive motion. In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997).[1]  For this reason, to the extent McDuffie has filed a motion under 28 U.S.C. 2255, that motion [Dkt. No. 141] must be dismissed without prejudice to allow him to petition the Fourth Circuit for leave to file a second or successive motion to vacate.

In this same pleading, McDuffie moves in the alternative for a new trial under Fed. R. Crim. P. 33, which provides that such motions must be filed within three years of the conviction becoming final.[2]  On August 17, 1999, movant was convicted by a jury after a four-day trial, and his direct appeal of that conviction was affirmed on December 26, 2001.  Given more than fourteen years have passed since his conviction became final, any motion under Rule 33 is time-barred.

Even if McDuffie's Rule 33 motion were not time-barred, on the record before the Court, it would be summarily denied.  In the Fourth Circuit, to succeed on a Rule 33 motion, a defendant must satisfy all five prongs of the test announced in United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). Specifically, he must show that:  1) the evidence is newly discovered; 2) the movant exercised due diligence in discovering the evidence; 3) the evidence is not merely

---

[1] For claims based on newly discovered evidence, a movant must show that the newly discovered evidence when "viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the defendant guilty of the offense." Vial, 115 F.3d at 1194.

[2] Under Fed. R. Crim. P. 33(b)(1), "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within three years after the verdict or finding of guilty."

2

cumulative or impeaching; 4) the evidence is material to the issues; and 5) the evidence would probably result in an acquittal at a new trial. Accord United States v. Moore, 709 F.3d 287, 292 (4th Cir. 2013). Whether to grant a Rule 33 motion rests with the discretion of the court.

Although McDuffie has arguably satisfied the first four prongs of the Chavis test, he clearly fails to satisfy the fifth prong because it is not probable that the defect in the expert's testimony about the hair analysis, which is the only newly discovered evidence in this case, would "probably have resulted in an acquittal." As the record shows, there was overwhelming other evidence upon which a reasonable jury would have convicted McDuffie absent the hair comparison testimony.

The key evidence in the trial was the testimony of co-conspirator Gary David Spinner who described in detail how McDuffie and co-conspirators, Eric Dorsey, Bernie Turner, and Howard Diggs committed a series of armed robberies of post offices, federally insured banks, and a jewelry store between December 28, 1998 and March 23, 1999. United States v. McDuffie, 24 F. App'x 167, 172 (4th Cir. 2001). Spinner's detailed testimony was corroborated by the testimony of multiple victims including bank tellers, postal employees, and patrons in the victim establishments. Physical evidence corroborated much of Spinner's testimony. That evidence included the recovery of firearms and ski masks from the car in which the defendants were arrested which was consistent with the descriptions of these items provided by the robbery victims. Pawn shop receipts for jewelry stolen from the jewelry store were found in co-defendant Dorsey's possession and a ripped up postal money order stolen from the post office robbery was found in McDuffie's sister's home. In addition, a fingerprint expert testified that a print found at one of the bank robberies matched McDuffie's left ring finger. This quantum of evidence was more than enough upon which to convict McDuffie. Lastly, although there was no

forensic evidence such as fingerprints or hairs to link either Dorsey or Turner to the robberies, the jury nevertheless found those two co-defendants guilty of all the crimes charged. Any addition the hair comparison evidence may have made to the total evidence in this case was, at best, minimal. That the hair comparison testimony took up 20 pages of a transcript consisting of hundreds of pages shows how small a contribution it made.

Finally, if one reads the transcript of the hair comparison expert's testimony as a whole, it is clear that in addition to his discredited conclusions, the expert clearly testified in response to a prosecutor's question that forensic hair comparison was not a means of absolute identification. "Unlike a DNA examination or a latent fingerprint examination, you cannot exclude everyone else in the society or the world as possibly being a contributor of a hair . . . so we can't say that this hair came from any one particular individual to the exclusion of all else." Petition, Attach. 4, 773:1-6 ("Tr."). Again, during cross-examination he confirmed that microscopic hair analysis did not provide absolute identification; Tr. 781:20-24, and went on to explain that it could not even provide probabilities of identification. "I testified that the probabilities can't be calculated such as in DNA and it's not an absolute personal means of identification . . ." Tr. 783:21-23.

Because the hair comparison analysis played such a small part in the evidence presented by the government and included clear caveats as to its conclusiveness, movant cannot show that there is a probability that the verdict would have been different had that testimony not included the errors now conceded by the United States.

For all these reasons, movant's Rule 33 motion will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 21st day of March, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge