IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GARY D'ANGELO MCDUFFIE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 1:16-cv-775 (LMB) |
| ) | Crim. No. 1:99-cr-203-1 (LMB) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Before the Court is Gary D'Angelo McDuffie's ("McDuffie" or "movant") motion filed under 28 U.S.C. § 2255, in which he seeks to have his convictions under Counts 3 and 7 for violating 18 U.S.C. § 924(c) vacated in light of recent Supreme Court precedent. For the reasons stated below, McDuffie's motion will be granted in part and dismissed in part, and his conviction under Count 3 will be vacated.

I.

On June 4, 1999, a federal grand jury in the Eastern District of Virginia returned a 12-count indictment charging McDuffie and three codefendants with various offenses related to an alleged robbery scheme.[1] Specifically, McDuffie was charged with 10 counts: conspiracy to commit robbery in violation of 18 U.S.C. § 371 (Count 1);[2] federal bank robbery in violation of 18 U.S.C.

---

[1] The indictment alleged that the conspirators targeted banks, post offices, and jewelry stores for armed robbery, employing "a particular modus operandi . . . : One member of the conspiracy would be armed with a firearm and would control the lobby while another member of the conspiracy would vault the counter and retrieve cash and valuables from drawers or safes." See Indictment [Dkt. No. 14] 3-4.

[2] The indictment identified three offenses whose commission were the subject of the conspiracy: federal bank robbery in violation of 18 U.S.C. § 2113(a) and (d); post office robbery in violation of § 2114(a); and Hobbs Act robbery in violation of 18 U.S.C. § 1951(a).

§ 2113(a) (Counts 2, 4, and 8); robbery of a U.S. Post Office in violation of 18 U.S.C. § 2114(a) (Count 6); using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 3, 5, 7, and 9); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Count 12). The conspiracy charged in Count 1 was the predicate crime of violence underlying Count 3; the bank robberies charged in Counts 4 and 8 were the predicate crimes of violence underlying Counts 5 and 9, respectively; and the post office robbery charged in Count 6 was the predicate crime of violence underlying Count 7. See Indictment [Dkt. No. 14].[3]

On August 17, 1999, after a four-day trial, the jury convicted McDuffie of all ten counts.[4] On November 19, 1999, the Court sentenced McDuffie to a total of 1,492 months' incarceration, consisting of concurrent sentences of 60 months, 292 months, 292 months, 292 months, 292 months, and 120 months of imprisonment as to Counts 1, 2, 4, 6, 8, and 12, respectively, to be followed by four consecutive 25-year sentences as to Counts 3, 5, 7, and 9.[5] McDuffie was also sentenced to five total years of supervised release and ordered to pay restitution and $1,000 in special assessments. McDuffie appealed his convictions and sentence, the Fourth Circuit affirmed, and the Supreme Court denied certiorari. McDuffie filed an initial motion to vacate under 28 U.S.C. § 2255 on June 26, 2003; that motion was dismissed on December 10, 2003, and the court

---

[3] The indictment was also attached to the government's opposition to McDuffie's § 2255 motion [Dkt. No. 191-1].

[4] The evidence established that on January 20, 1999, McDuffie and coconspirators Dorsey and Diggs entered the Buckingham Station Post Office in Arlington, Virginia. Dorsey was the gunman who announced the robbery as the defendants entered the post office, while McDuffie jumped over the counter to steal cash and stamps. During the robbery, an elderly postal customer was shoved to the ground, and Dorsey pointed the gun at the head of one of the postal employees. Presentence Report ¶¶ 17-18.

[5] As calculated by the U.S. Probation Office and adopted by the Court, McDuffie's offense level was 35 and his criminal history level VI.

of appeals declined to issue a certificate of appealability and dismissed McDuffie's appeal. He filed a second § 2255 motion on February 5, 2016, which was dismissed without prejudice for failure to secure authorization from the court of appeals.

On June 15, 2016, the Office of the Federal Public Defender was appointed to represent McDuffie for purposes of filing a motion seeking relief based on Johnson v. United States (Johnson II), 135 S. Ct. 2551 (2015), in which the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is unconstitutionally vague, see id. at 2557-63. On June 27, 2016, the court of appeals authorized McDuffie to file a second or successive § 2255 motion based on the rule announced in Johnson II. McDuffie then filed the present motion, which argues that his § 924(c) convictions under Counts 3 and 7 should be vacated because the predicate offenses underlying those counts no longer qualify as crimes of violence.[6] In October 2016, the motion was stayed to await further guidance from the Supreme Court and the Fourth Circuit. On June 24, 2019, the Supreme Court held that the residual clause of § 924(c)(3)'s definition of "crime of violence" is also unconstitutionally vague. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019).[7] In the wake of Davis, the parties were ordered to supplement their briefing on whether McDuffie is entitled to § 2255 relief and, if so, what form such relief should take. The matter is now ripe for decision.[8]

---

[6] Several months before McDuffie filed this § 2255 motion, the Fourth Circuit held in a published opinion that federal bank robbery as defined in 18 U.S.C. § 2113(a)—which is the predicate offense underlying Counts 5 and 9—qualifies as a crime of violence for purposes of § 924(c)(3)'s force clause. See United States v. McNeal, 818 F.3d 141, 151-57 (4th Cir. 2016).

[7] Between Johnson II and Davis, the Supreme Court decided Sessions v. Dimaya, holding that the residual clause of 18 U.S.C. § 16's definition of "crime of violence"—which is nearly identical to § 924(c)(3)'s residual clause—is unconstitutionally vague. 138 S. Ct. 1204, 1210 (2018).

[8] In August 2016, the government filed a motion to dismiss, arguing that McDuffie's § 2255 motion is time barred under 28 U.S.C. § 2255(f)(3) and reserving all other defenses and arguments. This Court has previously rejected identical timeliness arguments, see, e.g.,

II.

Section 924(c) prohibits the use, carrying, or brandishing of a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). It further defines "crime of violence" as any felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or (B) "by its nature . . . involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3). Subsection (A) of the definition is known as the "force" clause; subsection (B), the "residual" clause.

After Davis, there is no dispute that the residual clause is unconstitutionally vague and cannot be used to support McDuffie's § 924(c) convictions. What remains are the questions whether the predicate offenses underlying Counts 3 and 7—conspiracy to commit robbery and post office robbery, respectively—qualify as crimes of violence under § 924(c)'s force clause. If they so qualify, McDuffie's convictions remain valid, and his § 2255 motion must be dismissed. If not, those convictions must be vacated.

Well-established case law sets forth the methodology the Court must employ in answering those questions. To determine whether a given offense qualifies as a crime of

---

Chapman v. United States, 326 F. Supp. 3d 228, 236-40 (E.D. Va. 2018), and finds no merit in the suggestion that McDuffie's motion was not timely made. Similarly, the government's May 2018 supplemental response argues that McDuffie procedurally defaulted his vagueness challenge by not raising the issue on direct appeal. For the reasons stated in Blackman v. United States, No. 1:12-cr-507, slip op. at 4-6 (E.D. Va. Aug. 6, 2019), and Royer v. United States, 324 F. Supp. 3d 719, 735-36 (E.D. Va. 2018), those arguments are unpersuasive. Accordingly, the Court finds that there are no procedural barriers preventing McDuffie's § 2255 motion from being assessed on the merits.

On August 20, 2019, McDuffie filed a pro se "Supplemental Motion" under § 2255, urging the Court to allow him to "supplement" his pending § 2255 motion in the wake of Dimaya and Davis. Because the Court has already ordered the parties to supplement their briefing in light of those Supreme Court decisions, McDuffie's pro se motion will be dismissed as moot.

4

violence under the force clause, courts "use an inquiry known as the 'categorical' approach," in which they "look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force"[9] and "consider only the crime as defined, not the particular facts in the case." United States v. Simms, 914 F.3d 229, 233 (4th Cir. 2019), petition for cert. filed, No. 18-1338 (U.S. Apr. 24, 2019). Although a court employing the categorical approach may not consider the defendant's actual conduct, where "the criminal statute is 'divisible'—that is, [where] it lists 'multiple, alternative elements, and so effectively creates several different . . . crimes'—the Court may look to 'a limited class of documents, such as indictments and jury instructions, to determine which alternative' served as the predicate offense." Larode v. United States, 356 F. Supp. 3d 561, 570 (E.D. Va. 2019) (second alteration in original) (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)); see also United States v. Gomez, 690 F.3d 194, 198 (4th Cir. 2012) (instructing that the modified categorical approach should be used "for the sole purpose of determining which part of the statute the defendant violated").

III.

A.

The first question is easily answered. The predicate offense underlying Count 3 was conspiracy in violation of § 371 as charged in Count 1. Section 371 makes it a crime for "two or more persons [to] conspire . . . to commit any offense against the United States" so long as one

---

[9] "The term 'physical force' . . . long has been defined as 'violent force—that is, force capable of causing physical pain or injury to another person." United States v. Dinkins, 928 F.3d 349, 354 (4th Cir. 2019) (emphasis in original) (quoting Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010)). Recently, the Supreme Court clarified that "violent" force is force sufficient "to overcome the victim's resistance." See id. (discussing Stokeling v. United States, 139 S. Ct. 544, 549 (2019)).

5

of the conspirators "do[es] any act to effect the object of the conspiracy." 18 U.S.C. § 371. The indictment alleged that McDuffie and his coconspirators agreed to commit several federal offenses: federal bank robbery, post office robbery, and Hobbs Act robbery. But as recent case law from the Fourth Circuit has underscored, there is a critical distinction between conspiracy offenses and substantive offenses which are the objects of a conspiracy, at least with respect to § 924(c)(3)(A)'s force clause. "To prove a conspiracy under 18 U.S.C. § 371, the government must establish an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004). In other words, a conspiracy offense requires only an agreement to commit an offense and an overt act taken in furtherance of the conspiracy; the offense need not have been committed, and the overt act can be any "outward objective action . . . which evinces th[e] conspiracy," United States v. O'Connor, 158 F. Supp. 2d 697, 723 n.49 (E.D. Va. 2001). For this reason, the Fourth Circuit has recently clarified that although substantive Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A), see United States v. Mathis, Nos. 16-4633 et al., slip op. at 37 (4th Cir. July 31, 2019), conspiracy to commit Hobbs Act robbery does not so qualify because an agreement to commit the offense "does not invariably require the actual, attempted, or threatened use of physical force," United States v. Simms, 914 F.3d 229, 233-34 (4th Cir. 2019). See also United States v. White, 571 F.3d 365, 369 (4th Cir. 2009) (holding that criminal conspiracy under North Carolina law, which requires the government to prove that the defendant and another entered into an agreement to commit an offense and intended that the agreement be carried out, is not a "violent felony" for purposes of the similarly worded force clause in 18 U.S.C. § 924(e)(2)(B)(i)). The same analysis holds true for conspiracy to commit federal bank robbery or post office robbery. Because a defendant may be convicted of § 371

6

conspiracy even if the government does not prove any actual, attempted, or threatened use of force, § 371 does not qualify as a crime of violence under § 924(c)(3)'s force clause, and McDuffie's conviction under Count 3 cannot stand.

In light of this clear precedent, the government agrees that Count 3 should be vacated after Davis. "Although in most cases the government would seek resentencing when a count of conviction is vacated, the government does not believe that resentencing is warranted here" in light of the substantial terms of imprisonment to which McDuffie will remain subject. Gov't's Suppl. Mem. on Davis v. United States [Dkt. No. 199] 10. McDuffie did not state a different view in his reply to the government's supplemental memorandum. The Court agrees that given the particular circumstances of McDuffie's sentence, a full de novo resentencing would be a poor use of resources. Accordingly, absent any objection from movant, the Court will simply vacate Count 3, amend the judgment order to remove that count of conviction and the additional 25 years of incarceration it imposed, and order that movant be reimbursed the $100 special assessment associated with that count.

B.

McDuffie's argument in favor of vacating his conviction under Count 7 is less successful. The post office robbery offense at issue in that § 924(c) conviction is defined as follows:

> A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a).

The parties agree that § 2114(a) is divisible in at least one sense. "If statutory alternatives in a criminal statute carry different punishments, then they must be elements of different crimes." United States v. Enoch, 865 F.3d 575, 579 (7th Cir. 2017) (citing Mathis v. United States, 136 S. Ct. 2243, 2256 (2017)). Consequently, the first portion of the provision ("simple" assault or robbery) exposing a defendant to 10 years' imprisonment is divisible from the latter portion exposing a defendant to an enhanced 25-year maximum. See id. at 579-80 ("Section 2114(a) is a divisible statute with two distinct parts with separate elements and sentences."); see also Gray v. United States, Nos. CV 16-9680 & CR 95-160, 2018 WL 8838797, at *5-7 (C.D. Cal. Nov. 6, 2018) ("Section 2114(a) describes two levels of offense subject to different punishments. . . . Therefore, [it] is divisible into at least two parts, each defining a crime, making the modified categorical approach appropriate."); Williams v. United States, Nos. C16-5559 & CR11-5505, 2017 WL 1166141, at *5 (W.D. Wash. Mar. 29, 2017) ("§ 2114(a) is divisible into two separate parts, at the very least."), appeal docketed, No. 17-35279 (9th Cir. Mar. 30, 2017). The parties likewise agree that McDuffie was charged under the enhanced 25-year portion of the criminal statute; Count 6 of the indictment expressly charges McDuffie not only with "assault[ing] persons having lawful charge, control, and custody of mail matter and of money and other property of the United States . . . with intent to rob, steal, and purloin such mail matter, money, and other property" but also with "put[ting] the life of such persons . . . in jeopardy by the use of a dangerous weapon."

But that is where the parties' agreement ends. McDuffie points out that there are three separate ways in which a defendant can be exposed to the longer 25-year term of imprisonment: by (i) wounding the custodian of the U.S. mail, money, or property during a robbery, (ii) putting that custodian's life in jeopardy during a robbery by using a dangerous weapon, or

8

(iii) committing any subsequent offense punishable under § 2114(a). McDuffie argues that these separate subparts are not themselves divisible and therefore that the government must prove that all conduct criminalized by § 2114(a)—including simple assault or robbery, which if committed as a subsequent offense exposes a defendant to the 25-year maximum—necessarily "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The government disagrees, arguing that the wounding and life-in-jeopardy portions of § 2114(a)'s enhanced penalty provision are divisible from the subsequent-offense portion. The government further argues that under binding precedent, even simple assault or robbery as defined in the first half of § 2114(a) qualify as crimes of violence for purposes of § 924(c).

The government has the better argument. Assessing a criminal statute's divisibility is a matter of statutory interpretation and requires a court to decide whether Congress has "list[ed] multiple elements disjunctively" or simply "enumerate[d] various factual means of committing a single element." Mathis, 136 S. Ct. at 2249. A close inspection of § 2114(a)'s enhanced penalty provision reveals that Congress intended to create alternative elements (i.e., different offenses) rather than simply "alternative means of committing" the same offense, see id. (quoting Schad v. Arizona, 501 U.S. 624, 636 (1991) (plurality opinion)). The three types of criminal conduct that can expose a defendant to the 25-year maximum are not "various factual ways of committing some component of the offense," id. (discussing as an example a hypothetical statute of which an element is the use of a "knife, gun, bat, or similar weapon"), but rather are factually unrelated. Moreover, each portion of the enhanced penalty provision is singled out for a different reason: The wounding portion reflects a congressional judgment that greater punishment is appropriate where a government official has been seriously hurt; the life-in-jeopardy provision, where a dangerous weapon is used in such a way as to seriously threaten the official; and the subsequent-

9

offense portion, where a defendant who has previously been convicted of violating § 2114(a) reoffends and so requires a greater sentence to achieve deterrence and incapacitation. The distinct penological interests underlying each portion further support the conclusion that Congress intended to create separate, divisible offenses.

Accordingly, under the modified categorical approach, the Court may look to the charging document and judgment order to determine which of these divisible offenses served as the predicate crime of violence underlying McDuffie's § 924(c) conviction. Those documents confirm that the predicate crime was putting the life of a custodian of U.S. mail, money, or property in jeopardy by using a dangerous weapon during a robbery.[10]

McDuffie's final argument is that because "possession of a gun in and of itself puts the victim's 'life in danger,'" a defendant can be convicted of putting a victim's life in danger during a robbery without necessarily using, attempting to use, or threatening to use physical force. See Enoch, 865 F.3d at 581-82 (citation omitted) (articulating a similar argument made by the defendant). That argument has been rejected by multiple courts of appeals, see, e.g., id. at 582 ("[I]t is beyond question that a robbery that puts a person's life in jeopardy by the use of a dangerous weapon is a violent crime under the Johnson [I] definition . . . ."); In re Watt, 829 F.3d 1287, 1290 (11th Cir. 2016) (holding that the offense of assaulting a victim and putting her life "in jeopardy" through the use of a firearm "satisfies the requirement . . . that the underlying offense have 'as an element, the use, attempted use, or threatened use of physical force against the person or property of another'" (citation omitted)), and district courts, see, e.g., Gray, 2018

---

[10] McDuffie was sentenced to 292 months' imprisonment for violating § 2114(a)—a term of imprisonment which exceeds the 10-year maximum for "simple" assault or robbery and which could only have been authorized under the enhanced penalty provision.

WL 8838797, at *7 (holding that the life-in-jeopardy provision is categorically a crime of violence because the dangerous weapon must be used during robbery in such a way "that the life of the person being robbed is placed in an objective [state] of danger," which "satisfies § 924(c)(3)(A)'s requirement" (alteration in original) (citation omitted)). This Court finds McDuffie's argument unconvincing and joins the above-cited courts in concluding that the specific, divisible offense underlying McDuffie's § 924(c) conviction as charged in Count 7 qualifies as a crime of violence under the force clause.[11]

IV.

For the foregoing reasons, McDuffie's motion will be granted in part and dismissed in part, and his conviction under Count 3 will be vacated, by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 21st day of August, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[11] In light of this finding, there is no need to address the government's alternative argument that the simple assault or robbery portions of § 2114(a) qualify as crimes of violence under Johnson I and Stokeling.